UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,  Case No. 3:20-cr-146

        Plaintiff,

v.  MEMORANDUM OPINION
AND ORDER

Alejandro Salazar,

        Defendant.

## I. INTRODUCTION

Defendant Alejandro Salazar seeks to suppress evidence collected during a search of his motor vehicle. (Doc. No. 10). The government filed a brief in opposition to Salazar's motion. (Doc. No. 15). During a hearing on Salazar's motion, I granted Salazar leave to file supplemental briefing. Salazar filed his supplemental brief in support of his motion to suppress, (Doc. No. 22), and the government filed a response. (Doc. No. 24). For the reasons stated below, I deny Salazar's motion.

## II. BACKGROUND

On January 19, 2020, two 911 callers reported hearing shots fired in a neighborhood in Toledo, Ohio. The first caller reported hearing 9-10 shots coming from the far side of railroad tracks near her home on Girard Street. The second caller reported hearing 7 to 10 shots fired near the intersection of East Broadway Avenue and Richford Street, as well as seeing a vehicle drive from the area toward Richford. Both callers provided their names and street addresses to the dispatcher.

When officers from the Toledo Police Department responded, they found two men in a vehicle with its engine running, parked along the side of Richford. Officers ran the driver's license of the man in the driver's seat – Salazar – and determined his license was suspended.

After Salazar exited the vehicle, officers conducted an inventory search before towing the vehicle. They located a firearm between the driver's seat and the center console. Salazar subsequently was indicted on one count of illegally possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. No. 1). He moves to suppress the evidence obtained during the search, arguing officers did not have reasonable suspicion to detain him and that the warrantless search of the vehicle was impermissible. (Doc. No. 10).

I held an evidentiary hearing via Zoom videoconference on January 29, 2021. I first advised Salazar that he had the right under the Sixth Amendment to object and to wait until the Covid-19 pandemic permitted the hearing to be held in person. Salazar stated he understood and agreed to waive any objection to proceeding by videoconference.

Toledo Police Officer Tylir Sanders testified at the hearing. He indicated he responded to the 911 call that night and observed a vehicle parked in an empty field on Richford a short distance from the intersection of Richford and East Broadway. The vehicle's engine was running but did not have any lights on. Sanders initiated a suspicious vehicle stop and approached the vehicle. Salazar was in the driver's seat and another man, Craig Hallauer, was sitting in the passenger seat. Sanders explained to the men he was investigating a report that shots had been fired nearby. Salazar provided his driver's license at Sanders' request. Sanders ran Salazar's driver's license through a police database and the database indicated that his license was suspended. Sanders returned to the

vehicle and instructed Salazar to step out. After some back and forth, Salazar got out and was placed under arrest.[1]

Officer William Gregus, also an officer with the Toledo Police Department, testified at the hearing as well. He also responded to the shots-fired call and arrived shortly after Sanders. Gregus provided back-up as Sanders approached the vehicle. Gregus remained near the vehicle while Sanders ran Salazar's identification. Once Sanders placed Salazar under arrest, Gregus and another officer began conducting what Gregus described as a "Terry pat," or light search, of the vehicle for weapons. Gregus observed a gun between the driver's seat and the center console. Another officer conducted an inventory search of the vehicle before it was towed and removed the gun from the vehicle at that time.[2]

Monica Salazar, the Defendant's wife, also testified at the hearing. She testified she owns a house located at 915 Richford Street, which she rented to Hallauer and Rebeca Ruiz at the time, and that Salazar had gone to the house on January 19, 2020, to fix a broken gas heater. A recording from Gregus' body camera appears to confirm Salazar explained these circumstances to Sanders when Sanders returned to the vehicle after reviewing the status of Salazar's license in the database.

### III.    ANALYSIS

Salazar contends the officers did not have reasonable suspicion to detain him and that the search of the vehicle violated his Fourth Amendment rights. (Doc. No. 10). Salazar's argument is not persuasive.

---

[1]  Hallauer also was placed under arrest due to outstanding warrants. Regrettably, Hallauer passed away in late December 2020.

[2]  Gregus testified Toledo Police Department policy requires officers to tow a vehicle driven by an individual with a suspended license as well as to conduct an inventory search of the vehicle prior to towing it.

There is no dispute that, in the early morning hours of January 19, 2020, dispatchers with the Toledo Police Department received two 911 calls reporting gunshots had been fired from a vehicle near the intersection of East Broadway Avenue and Richford Street. One of the callers reported the vehicle may have turned onto Richford from East Broadway. Officers responded to the area and noticed a vehicle idling along the side of the road with its lights off. Officer Sanders testified he found this suspicious due to the time of day, the proximity of the vehicle to the reported incident, and because it was very cold and snowing out. While Salazar ultimately had an innocent explanation for being where he was, the totality of the circumstances gave the officers reasonable suspicion and permitted them to investigate further. *See, e.g., United States v. Arvizu*, 534 U.S. 266, 273-75 (2002) (facts consistent with an innocent explanation may collectively amount to reasonable suspicion).

Sanders approached the vehicle and explained to Salazar why he was there. Salazar provided his driver's license. Sanders ran Salazar's license through a police database accessible through the computer terminal in his cruiser and the database indicated Salazar's license was under suspension. At this point, the officers decided to arrest Salazar for driving with a suspended license and to tow his vehicle.

The Fourth Amendment permitted the officers to conduct an inventory search of the vehicle prior to towing it. *United States v. Smith*, 510 F.3d 641, 650 (6th Cir. 2007) ("A valid inventory search conducted without a warrant does not violate the Fourth Amendment." (citing *South Dakota v. Opperman,* 428 U.S. 364, 369-71 (1976))); *see also United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013) ("Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory." (quoting *United States v. Agofsky,* 20 F.3d 866, 873 (8th Cir.1994))).

Salazar argues, however, that the officers relied on incorrect records in determining whether his license was suspended. After the January 2021 hearing on Salazar's motion, the Ohio Bureau of

4

Motor Vehicles indicated that Salazar's license was valid on July 22, 2019, and should not have been marked as suspended in the BMV records in January 2020. (Doc. No. 22 at 10). Salazar argues the search of his vehicle was unreasonable (and, therefore, the evidence obtained from that search should be excluded) because the officers would have had no basis to search his vehicle if not for the erroneous BMV information. (*Id.* at 6-7). The government did not respond to this argument in its supplemental opposition brief, other than to label it as irrelevant. (Doc. No. 24 at 3).

In some circumstances, the Exclusionary Rule may be applied to exclude evidence obtained through an officer's objectively reasonable reliance on erroneous or incorrect information obtained from other law enforcement officers. *See, e.g., Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560 (1971).

The Supreme Court has held, however, that applying the Exclusionary Rule to errors committed by government employees who are not law enforcement personnel would not further the rule's purpose of deterring police misconduct. *Arizona v. Evans*, 514 U.S. 1 (1995). The *Evans* case arose after a court employee failed to update a computer record to confirm that a warrant for Evans' arrest had been quashed. *Id.* at 5-6, 14-15. The Court reasoned "there is no basis for believing that application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed." *Id.* at 15. The Court then announced "a categorical exception to the exclusionary rule for clerical errors of court employees." *Id.* at 16.

This case involves a situation even further removed than that faced by the defendant in *Evans*. Other federal courts confronting similar circumstances have applied the principle announced in *Evans* and declined to exclude evidence obtained during searches conducted after the defendant's license was erroneously marked as suspended. *See, e.g., United States v. Southerland*, 486 F.3d 1355, 1359-60 (D.C. Cir. 2007); *United States v. Owens*, 142 F. Supp. 2d 255, 263-64 (D. Conn. 2001).

5

Salazar has not carried his burden of showing it was unreasonable for officers to rely on the information provided by the BMV.  Moreover, because Ohio law permits officers to arrest individuals who operate a vehicle with a suspended driver's license and Toledo Police Department policy required that an inventory search be conducted before the vehicle was towed, Salazar has not carried his burden of showing the search of his vehicle violated the Fourth Amendment.

## IV.   CONCLUSION

For these reasons, I deny Salazar's motion to suppress, (Doc. No. 10), and his supplemental motion to suppress.  (Doc. No. 22).

So Ordered.


s/ Jeffrey J. Helmick
United States District Judge